**HOFFERBERT, Collector of Internal Revenue, v. BRIGGS.**

**No. 5987.**

United States Court of Appeals Fourth Circuit.

Argued Nov. 10, 1949.

Decided Dec. 21, 1949.

can be no recovery of profits because the plaintiff's interest in the property ceases at the time of its destruction and

Howard P. Locke, Special Assistant to the Attorney General (Theron Lamar Caudle, Assistant Attorney General; Ellis N. Slack and Robert N. Anderson, Special

because he no longer has "title" certainly represents mechanical jurisprudence in its most extreme form.

Assistants to the Attorney General; Bernard J. Flynn, U. S. Attorney, and Norman P. Ramsey, Assistant United States Attorney, Baltimore, Md., on brief) for appellant.

H. Kennedy McCook, Washington, D. C. (William E. Furey, Washington, D. C., on brief), for appellee.

Before PARKER, Chief Judge and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal by the Collector of Internal Revenue for the District of Maryland from an adverse judgment in favor of a taxpayer in a suit to recover overpayments of income tax. The taxpayer is Southwick W. Briggs, and the suit relates to his income taxes for the years 1943, 1944 and 1945. His contention is that he reported as income for those years moneys received by him which should have been reported as long term capital gains under 26 U.S.C.A § 117, and that this resulted in an aggregate overpayment of taxes in the sum of $39,155.66 which he is entitled to recover. The District Judge so held and the Collector has appealed.

The facts are fully set forth in the opinion of the District Judge, 85 F.Supp. 941, and need not be here repeated. They may be summarized as follows: In the year 1933, taxpayer, who was the inventor and patentee of . an oil filter, organized the Briggs Clarifier Company and assigned to it the patent for the filter in return for $1500 in cash and 75% of the capital stock of the corporation, which was organized to manufacture and sell the filter. The corporation experienced financial difficulties and it became necessary to sell further stock to keep it afloat, so that by 1940 the total stock of taxpayer amounted to only about 2½% of that which was outstanding. In that year, when the Stone Company purchased a controlling interest in the corporation another contract was entered into by the terms of which the corporation agreed to pay taxpayer a salary as engineer and also to pay him certain stipulated royalties on all patents of his which had not been used by the corporation prior to January 1, 1940, and for which licenses were to be issued to the corporation. The royalties paid under this contract constitute the income in controversy.

Under the contract entered into with the corporation in 1933, taxpayer agreed, in assigning the original patent, to assign all right, title and interest in or to any future improvements which he might develop for the same or similar purposes; and the principal contention of the Collector is that the effect of this was to give to the corporation the right to the subsequent inventions patented by taxpayer for which the royalties were paid. It appears, however, that when the contract of 1940 was made, five important inventions which taxpayer had perfected had not been assigned to the company, and the fact that taxpayer at that time owned such a small percentage of the stock and that a controlling interest was being acquired by an outside party brought about the further adjustment of rights with respect to these inventions. Whether the contract be regarded as providing additional payment for inventions to which the corporation was already entitled under the prior contract or as providing for the payment for inventions to which its rights had not as yet been perfected, there can be no question but that the royalties were to be paid in consideration of the transfer of the inventions and the patents covering them, and not for services rendered the corporation which were covered by a separate provision of the contract.

The rule is well settled that where the owner of patents and inventions transfers them in consideration of royalty payments, such payments are properly treated as capital gains realized upon the sale of capital assets. Commissioner of Internal Revenue v. Hopkinson, 2 Cir., 126 F.2d 406. See also Commissioner of Internal Revenue v. Celanese Corp., 78 U.S. App.D.C. 292, 140 F.2d 339, 341. United States v. Adamson, 9 Cir., 161 F.2d 942; Commissioner of Internal Revenue v. Carter, 2 Cir., 170 F.2d 911; and Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143. And we see no reason why the rule is not properly applicable here. The patent

rights of taxpayer were inquestionably transferred; and they were transferred in consideration of the royalty payments here under consideration. Even if it be thought that the corporation was entitled to the transfer under the terms of the original contract, certain it is that the transfer had not been made; and it was not made until after the contract of 1940 had settled the rights of the parties with regard thereto. Whatever construction be put upon the terms of the original contract, the transfer for which the contract of 1940 provided was necessary to transfer title to the five patents, and the royalties here in question were unquestionably paid in consideration of the transfer.

Even if the royalties had been mere additional payments for patent right already transferred, there is no reason why they should not be treated as gains from the sale of capital assets and not as ordinary income. Payment for the transfer of a capital asset does not suffer a change of character because made after the transfer or because made in addition to a prior consideration. There is nothing in the contract or elsewhere to support the contention that the payment of the royalties was compensation for personal services.

The Collector makes the additional point that the inventions of taxpayer were property held for sale in trade or business and that gains derived from their sale were not covered by sec. 117. This is entirely lacking in merit. The section provides:

"Capital assets.—The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(l)".

The exclusion of this section manifestly has no application to the inventions and patents here involved, which were not stock in trade and were not held for sale to customers in the ordinary course of business and were not property used in business and subject to the depreciation allowance of section 23(l). See Myers v. Com'r, 6 T.C. 258, 266; Kelly v. Com'r, 6 T.C.M. 646. The case is readily distinguishable from Harvey v. Com'r, 9 Cir., 171 F.2d 952, where the expenses of inventive activity were deducted as a business expense of a machine company and the patents were used in its business and were subject to depreciation.

The judgment appealed from will be affirmed.

Affirmed.