**UNITED STATES of America,
Appellant,**

**v.**

**Eben H. CARRUTHERS and Nancy
Carruthers, Appellees.**

**No. 13932.**

United States Court of Appeals,
Ninth Circuit.

Feb. 4, 1955.

George Lynch, Attorney, Dept. of Justice, Washington, D. C., C. E. Luckey, U. S. Atty., Eugene, Or., Victor E. Harr, Asst. U. S. Atty., Portland, Or., for appellant.

Gordon Sloan, Astoria, Or., Carl E. Davidson, Charles P. Duffy, Portland, Or., for appellees.

Before HEALY, BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

This is an action for the recovery of individual income taxes collected from appellees by a former Collector of Internal Revenue of the United States for the District of Oregon for the calendar year 1950.

On February 9, 1951, the appellees. filed a joint income tax return for the year 1950 reporting a total net income of $36,927.44 and a tax liability of $10,-581.98, which was duly paid. In this return the appellees included as ordinary gross income the total amount of $38,-976.75, received from the E. H. Carruthers Company in accordance with a. contract executed on May 27, 1950, between Carruthers and the company for the transfer of patent rights.

On October 2, 1951, the appellees filed. an amended joint income tax return showing a net income of $28,419.06 and. a timely claim for refund on Form 843 for $3,635.92, upon the ground that the amount of $17,016.75 received by appellee in the year 1950 as provided in the contract with the company of May 27, 1950, represented profit to him on the sale of patent rights as a long-term capital gain rather than as ordinary income.

Appellees filed a claim for refund but, did not receive a notice of disallowance. They commenced this action in accordance with § 3772(a) (2) of the Internal. Revenue Code, 26 U.S.C.A. § 3772(a) (2), after a period of more than six. months had expired from the filing of their claim for refund.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, John J. Kelley, Jr., Sp. Assts. to Atty. Gen.,

The question here is whether the lower court was correct in determining that the payments received by the taxpayers.

in the taxable year 1950 from the E. H. Carruthers Company for the transfer of patent rights constituted proceeds from a sale within the meaning of Section 117 of the Internal Revenue Code, 26 U.S.C. A. § 117, so as to be taxable as capital gains.

The lower court made Findings of Fact in part as follows:

IV

"On the 27th day of May, 1950 plaintiff Eben H. Carruthers entered into a contract with the E. H. Carruthers Company, an Oregon corporation, * * * and on the 31st day of May, 1950 plaintiff Eben H. Carruthers entered into a 'license agreement' with the same corporation * * * under the terms of which he granted to the company *'an exclusive license to manufacture, use, sell or lease machinery or to practice any method in accordance with or as set forth in certain United States and foreign patents and applications for patents, together with the right to sublicense others'*, as more fully stated in the agreement. The exclusive license was *'limited to the tuna canning industry'*, but extended *'to the end of the term of any patent listed or to the end of the term of any patent which may issue upon a patent application listed.'* " (Emphasis ours.)

V

"The inventions of plaintiff Eben H. Carruthers, which were the subject of the said agreements, had been reduced to practice more than six months prior to the 27th day of May, 1950."

VIII

"The license agreement dated May 31, 1950 * * * constituted an absolute assignment and sale of all of the inventions, applications for patent and patents described therein. The amount of $17,016.75 received by plaintiff Eben H. Carruthers in the year 1950 as 'royal-

ties' was in consideration for such assignment and sale."

The lower court thereupon made the following Conclusions of Law:

I

"The inventions, applications for patent and patents described in said license agreements were capital assets in the hands of plaintiff Eben H. Carruthers."

II

"The contract of May 27, 1950 * * * and the license agreement dated May 31, 1950 * * * constituted an absolute assignment and sale of said inventions, applications for patent and patents, within the meaning of Section 117 of the Internal Revenue Code."

III

"The amounts received by plaintiff Eben H. Carruthers during the year 1950 as 'royalties' from E. H. Carruthers Company, an Oregon corporation, by virtue of said agreements, were within the purview of Section 117 of the Internal Revenue Code and were subject to the limitations of Section 117(b) of the Internal Revenue Code."

IV

"By reason of the foregoing, plaintiffs are entitled to recover judgment of and from defendant * * *."

Appellant complains that the lower court made erroneous findings and conclusions when it determined that there was a *sale* of patents within the meaning of Section 117 of the Internal Revenue Code. However, appellant admits that an assignment for consideration is a sale within the meaning of § 117.

On appeal, the government no longer questions that the patents are capital assets.

Both parties agree and appellant states in its brief, "Whether a transfer of an interest or a right under a patent is a sale or only a license does not depend

**24**

upon the terminology used by the parties."

Appellant makes two arguments for reversal:

One, The Proceeds Received By The Patentee Were Ordinary Income Because The Transfer Was Limited To The Tuna Industry Which Establishes That There Was A Retention Of Rights Of The Type Which Makes The Transfer A License Rather Than An Assignment For Tax Purposes.

■ Both parties point to Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 as the classic case in this field. That case was concerned with infringement of patent rights rather than with their taxation. Nevertheless, the court laid down a test, (which has been repeatedly quoted with approval) for determining whether there has been a license or an assignment of patent rights. The test set forth in the Waterman case, 138 U.S. at page 255, 11 S.Ct. at page 335, is as follows:

"The monopoly thus granted is one entire thing, and cannot be divided into parts, except as authorized by those laws. The patentee or his assigns may, by instrument in writing, assign, grant, and convey, either (1) the *whole* patent, comprising the exclusive right to make, use, and vend the invention throughout the United States; or (2) an undivided part or share of that exclusive right; or (3) the exclusive right under the patent within and throughout a specified part of the United States. [Rev.Stat.] § 4898. A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers * * *. Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringment." (Emphasis added.)

Counsel for appellant admitted that under the Waterman decision it is not necessary that the patentee transfer all his rights in the patents for the result to be an assignment. Clearly, the transfer can be limited in area. However, in oral argument on appeal it was urged that even though there could be an assignment to a specified area, for the transfer to be an assignment under the Waterman decision it must be of "whole" patent rights to that limited area; and, a transfer to *an industry* (even though unlimited in area) must receive different tax treatment. The cases cited by appellant do not, in our view, support the argument tendered in this paragraph. Counsel for appellant admitted in oral argument that no case holds that a transfer of a patent for use in an industry would not, for that reason, be a sale within the meaning of § 117.

Appellant's chief argument in this case is that this transfer is to *an industry* rather than to *a geographical area* and consequently does not strictly comply with the Waterman test; therefore the transfer was a *license* and not an *assignment*. For example, it was argued that a transfer of an "exclusive right to make, use and vend the invention on the Pacific Coast" would be an assignment and that the proceeds would receive capital gains treatment; whereas, a transfer of an "exclusive right to make, use and vend the invention in the tuna industry" would be a license and the proceeds would be taxable as ordinary income.

No explanation has been attempted by appellant, nor has it proffered any policy argument as to why a transfer enveloping *an industry* should be given such different tax treatment from a transfer encompassing an area. We are not convinced that it would be reasonable or necessary for this court, in the tax case now before us, to strictly and literally apply the test announced in an infringment suit in the nineteenth century. We think that this is particularly true when the court in the Waterman case was not presented with an industry-wide

transfer. Furthermore, if the Waterman test is applied, we believe the taxpayers would pass this test.

Government counsel relies heavily upon the adjective "whole" used by the court in the Waterman case in describing the patent. There, the court was presented with a transfer to "manufacture and sell" and emphasized the absence of the transfer of "use." It said, 138 U.S. at page 256, 11 S.Ct. at page 335:

> "On the other hand, the grant of an exclusive right under the patent within a certain district, which does not include the right to make, and the right to use, and the right to sell, is not a grant of a title in the whole patent right within the district, and is therefore only a license."

"Whole," in the Waterman test apparently means the inclusive rights to "make, use and sell." In the case at bar the transfer did include the rights to make, use and sell and would therefore appear to meet the test of "whole" patents laid down in the Waterman case.

Counsel for appellees urged that this transfer was of a "whole" patent on a different ground. He pointed out that the patents were designed for the tuna industry and are used in, and only in, the tuna industry. Consequently, although there were words of limitation "to the tuna industry," there was in fact a transfer of "whole" patent rights since the tuna industry included the full scope of the patents.

In defense, and as an asserted basis for reversal, appellant relies upon statements in the patent claims which indicate that although the claims were particularly designed for the tuna industry, they had other uses. Also, the patentee admitted on cross-examination that he thought there was a possibility that the patents could be used in other industries. We believe that this argument of appellant is speculative. The testimony revealed that the patents had no established value for any purpose other than processing tuna fish, and that no attempt had ever been made to use the patents outside of the tuna industry.

Aside from the several cases which treat an assignment of patent rights to a limited area as a sale for tax purposes, and the cases which regard the transfer of a part interest in a patent as a sale for tax purposes, there are cases not in conformity with the Waterman test which hold that the transfer of patent interests should be treated as long-term capital gains. Allen v. Werner, 5 Cir., 190 F.2d 840, 842 is a case involving a "license" which was terminable on 90 days notice and which could not be assigned except upon transfer of the entire business. In holding that the taxpayer-patentee should be granted a tax refund on the basis that the receipt of royalties on this transfer of patent rights should be treated as a long-term capital gain rather than ordinary income, the court made this general observation:

> "The decisions consider the nature of the rights involved under a patent, and the interest of the assignor which require that proper effort to promote manufacture and sale of the patented article be provided and enforceable."

In Kavanagh v. Evans, 6 Cir., 188 F.2d 234, the government was denied its plea for the reversal of a lower court's determination that the taxpayer had a right to recover excessive taxes paid on the receipt of money from the transfer of patent rights because the proceeds should have been taxable as an assignment or sale of long-term capital gains under § 117, rather than as ordinary income. The interest retained by the patentee in that case appears to be substantially greater than the interest retained in the instant case. The transfer was of patent rights in a brake mechanism with the retention of the right to manufacture, use and sell the inventions in connection with a particular brake development and the right to transfer this aspect of the inventions to one other person.

**Second, Appellant Contends That The Agreement Could Not Be A Sale Within The Meaning Of § 117 Of The Internal Revenue Code Because Payment For The Patents Was Based On Royalties.**

 It is doubtful whether this contention is properly before this court since it does not appear in the contentions of appellant in the Pretrial Order in the lower court, nor is it listed in the Pretrial Order as an issue to be determined. Appellant mentioned the argument in its brief but cited no authority for this contention. Government counsel cited two cases in oral argument which were claimed to support this second point, but which are clearly distinguishable from the present case.

The first, Bloch v. United States, 2 Cir., 200 F.2d 63 was a case involving taxation of non-resident aliens and does not mention § 117. However, it is interesting to note that the court in the Bloch case distinguished its own prior decision in Commissioner v. Hopkinson, 2 Cir., 126 F.2d 406 on the basis that the rights of a non-resident alien were not involved in the Hopkinson decision. The Hopkinson case held, contrary to the government's position in that case and in the case at bar, that royalties received subsequent to a transfer of patents as consideration therefor were taxable as long-term capital gains under § 117.

The second case cited was Broderick v. Neale, 10 Cir., 201 F.2d 621, which considered an agreement that did not transfer the *use* of the patented articles and which terminated in one year instead of extending to the end of the term of the patents transferred.

We find no error in the lower court's determination of this case and the judgment should be and is therefore affirmed.