Peter J. MASSEY and Elizabeth Massey, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 11395.

United States Court of Appeals Seventh Circuit.

Oct. 21, 1955.

H. Brian Holland, Asst. Atty. Gen., David O. Walter, Atty., Dept. of Justice, Washington, D. C., Robert Tieken, U. S. Atty., Chicago, Ill., Ellis N. Slack, Melva M. Graney, Special Assts. to the Atty. Gen., for appellant.

Charles J. Merriam, Robert J. Downing, Peter J. Brennan, Jr., Chicago, Ill., (Merriam & Lorch, Mitchell & Conway, Chicago, Ill., of counsel), for appellees.

Before DUFFY, Chief Judge, and FINNEGAN and SCHNACKENBERG, Circuit Judges.

DUFFY, Chief Judge.

In this action taxpayers are seeking a refund of income taxes paid for the years 1948, 1949 and 1950 on royalties received by Peter J. Massey in connection with certain patents which had been issued to him. Whether taxpayers should recover the claimed refunds depends upon whether the royalties should be treated as long-term capital gains from the sale of capital assets or whether such royalties were ordinary income.

Taxpayers filed a joint return and originally reported and paid the tax on the basis that the royalty payments were ordinary income. Later, they filed amended returns and also filed claims for refund. The District Court held the royalty payments constituted gains from the sale of capital assets and entered judgment for taxpayers.

Taxpayer, Peter J. Massey, was executive vice-president of Seaman Paper Company which was a jobber or selling agent for paper manufacturers. He conceived and developed ideas for two inventions, one, a basic process for the coating of paper at any particular stage of the paper-making process, and the other, a subordinate process for the coating of paper before it becomes over-dried. United States Patents No. 1,921,368 and No. 1,921,369 were issued to him on August 8, 1933.

The patents were conceived and developed solely by Massey, largely on his own time, and involved the expenditure by him personally of approximately $150,000.00. Massey held sole and entire ownership in said Letters Patent from August 8, 1933 until December 1, 1933, and Seaman Paper Company recognized and acknowledged Massey to be the sole owner.

By an assignment dated December 1, 1933, Massey sold and assigned his entire right, title and interest in said patents to Seaman Paper Company. The consideration was stated to be $1.00 and other valuable considerations. A further agreement was executed under date of December 2, 1933 which provided that in the event Consolidated Water Power and Paper Company purchased for the sum of $100,000.00 a coating machine mentioned, and a half interest in the Massey patents, Seaman would 1) transfer to Massey 1000 shares of common capital stock of Munising Paper Company, and 2) transfer to Massey 1/5th of the amount of all royalties thereafter received by Seaman by reason of its ownership of the patents, and 1/5th of the net proceeds received by Seaman in connection with any sale by Seaman of its interests in said patents.

Also, on December 2, 1933, Seaman entered into an agreement with Consolidated whereby Seaman licensed Consolidated to use said patents for which Consolidated agreed to pay Seaman a royalty of 50 cents per ton on all coated paper manufactured by Consolidated in excess of 100,000 tons.

There also was an agreement dated December 2, 1933 whereby Seaman assigned and sold to Consolidated Water Power and Paper Company an undivided 1/2 interest in the patents, and the latter Company agreed to pay Massey 10 cents per ton of coated paper manufactured by Consolidated using the patented processes.

The required assignment of future royalties and net profits was executed by Seaman on September 25, 1934, and Seaman apparently also delivered to Massey the 1000 shares of Munising Paper Company stock.

In November, 1935, Seaman found itself in financial difficulties, and was indebted to Consolidated in an amount in excess of $100,000.00. On November 13, 1935, Seaman entered into a new agreement with Consolidated to which Massey was also a party, which provided that the license agreement of December 2, 1933 between Seaman and Consolidated, and the agreement of December 2, 1933 between Seaman and Massey to the extent to which they were not inconsistent with the November 13, 1935 agreement, were cancelled, and Seaman sold and assigned to Consolidated an undivided 4/10th interest in said patents for a credit of $100,000.00 against its indebtedness, and Seaman assigned to Massey a 1/10th interest in said patents. Consolidated agreed to pay Massey 10 cents per ton in excess of 100,000 tons of coated paper made by Consolidated under said patents, and 10% of the royalties received by Consolidated as a result of any license granted by Consolidated under said patents.

By later agreements the November 13, 1935 agreement was modified in some respects. Under one modification the royalty payment to Massey by Consolidated for coated paper manufactured at a particular mill was raised from 10 cents to 15 cents a ton. By another modification Massey was to pay a percentage of costs and expenses of infringement suits, and he was to share in the same proportion in recoveries in infringement suits brought by Consolidated.

The trial was before the Court without a jury. The Court found that as a result of the new agreement the contracting parties intended that Seaman was to be relieved of its obligation to make payments to Massey and that Consolidated became obligated to make such payments. The Court also found that Massey's right to receive such payments was in no way dependent upon or attributable to the ownership of the 1/10th interest which Seaman transferred to him, but arose solely by reason of his prior sale of the patents.

The contentions of the parties to this lawsuit are pointed up in sharper relief by the claim of the Government that there is no support in the record for the following portions of the District Court's findings of fact:

"12. * * * As a result of this new agreement, and as intended by the contracting parties, the only change affecting the payments to Massey for the previous sale of the patents was that Seaman was relieved from the obligation to make such payments (referring to royalty payments), and Consolidated's obligation to make such payments to Massey was substituted therefor."

"13. Massey was given an undivided one-tenth interest in the patents under the November 13, 1935 agreement, but this did not alter in any way his right to receive the payments of the balance of the sales price of the patents pursuant to the December, 1933 transactions. His right to receive such payments was in no way dependent upon or attributable to the ownership of the said one-tenth interest, but arose only from his prior sale of the patents."

The government also claims that the following Conclusion of Law is entirely unwarranted:

"VI. The subsequent agreement of November 13, 1935, between Seaman, Massey and Consolidated, in no way changed or altered the ef-

fect of the December, 1933 transaction as sales of capital assets to that of mere licenses, and the payments thereafter made by Consolidated to Massey in lieu of the prior payments by Seaman had the same character as the payments by Seaman, *i. e.*, they were consideration for the sale of capital assets."

The government argues that the foregoing findings and conclusion are erroneous because it claims the royalty payments received by taxpayer from Consolidated were attributable to his re-acquisition of a 1/10th ownership interest in the patents from Seaman and therefore constituted ordinary income to him. The government points out that the District Court failed to give any effect to the re-transfer by Seaman to taxpayer of a 1/10th interest in the patents.

■ The principle is well established that when the owner of a patent assigns it in consideration of royalty payments, the receipt of such payments is properly treated as capital gains realized from the sale of capital assets. Hofferbert v. Briggs, 4 Cir., 178 F.2d 743, 744; Commissioner of Internal Revenue v. Celanese Corporation of America, 78 U.S. App.D.C. 292, 140 F.2d 339, 341; Allen v. Werner, 5 Cir., 190 F.2d 840, 842; United States of America v. Carruthers, 9 Cir., 219 F.2d 21, 25.

In Kavanagh v. Evans, 6 Cir., 188 F.2d 234, at page 236, where it was held that gains from the transfer of patent rights were taxable as proceeds from the sale of capital assets, the Court, in referring to the patentee said:

"It was entirely lawful for him to retain an undivided part or share of his exclusive patent rights."

In Watson v. United States of America, 10 Cir., 222 F.2d 689, 690–692, the Court used this language:

"It is a firmly accepted principle of law that if the patentee conveys by an instrument in writing the exclusive right to make, use, and vend the invention throughout the United States, or an undivided part or share of that exclusive right, or the exclusive right under the patent within a specified area within the United States, the conveyance constitutes an assignment of the patent, complete or partial as the case may be; and that a transfer short of that is not an assignment but a license. (Citing cases.)

\* \* \* \* \* \*

"The agreement contained a provision relating to the termination of its exclusive character. The substance of the provision was that, in the event the corporation should after one year from the date of the agreement fail to make and sell 2,500 carts during any six-months period, the licensor should be free to license others to manufacture and sell carts. But that provision concerned itself exclusively with a condition subsequent. It did no more than provide that upon the occurrence of a stated event the grantor was empowered to terminate the exclusive right and title theretofore conveyed. It did not detract from the effectiveness of the agreement as constituting an assignment of the patent rights. (Citing cases.)

\* \* \* \* \* \*

"The contract between Watson and O'Donnell constituted an assignment to the corporation of the invention relating to the collapsible carts. Such assignment amounted to a sale of a capital asset. \* \* \* the income which the taxpayers received in the form of royalties from the corporation constituted long-term gain as distinguished from ordinary income." (Citing cases.)

■ We think there is support in the evidence for the findings made by the Court including those objected to by the government. Under the authorities cited, we are of the opinion that his conclusions of law are correct.

Judgment of the District Court is Affirmed.