VINCENT A. MARCO AND GLADYS M. MARCO, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52943. Filed December 16, 1955.

*Richard H. MacCracken, Esq.*, for the petitioners.
*George E. Constable, Esq.*, for the respondent.

### OPINION.

BLACK, *Judge:* The Commissioner has determined a deficiency in petitioners' income tax for the year 1951 of $31,694.42. The deficiency is due to an adjustment made to the income as reported on the joint return filed by petitioners for the calendar year 1951. This adjustment was: "(a) Ordinary income [increased] $50,590.91." This is explained in the deficiency notice as follows:

(a) In your income tax return for the calendar year 1951 you reported income from Marco Industries Company in the amount of $50,590.91 received by you pursuant to the terms of an agreement entered into by you and the said corporation. Fifty per cent of such amount you considered subject to tax as capital gain under the provisions of section 117 of the Internal Revenue Code. It is held that the aforementioned amount constitutes income taxable at ordinary rates and it is accordingly included in your income for this taxable year in accordance with the provisions of section 22 (a) of the Internal Revenue Code.

The petitioners assign error as to adjustment (a). In addition to contending that the Commissioner erred in adding the $50,590.91 in question to their net income for 1951, and that therefore there is no deficiency, petitioners contend that they overpaid their tax for 1951 in the amount of $10,466.52. The basis for this alleged overpayment is stated in the petition as follows:

(f) During the year 1951 Vincent A. Marco received from Dial Light Co. of America, Inc. payments arising out of said agreement in the amount of $28,339.68. Said payments were erroneously reported by petitioners as income subject to tax at ordinary rates. Petitioners now contend that said payments represent proceeds from the sale of capital assets held for more than six months, subject to the provisions of section 117 Internal Revenue Code. Affording such treatment to these payments, petitioners contend that they are entitled to a refund in the amount of $10,466.52.

The facts have been stipulated and are adopted as our findings of fact and are incorporated herein by reference. Such of the facts as are necessary to a decision of the question we have here to decide may be summarized as follows:

Petitioners are husband and wife and are residents of Los Angeles, California. They filed a joint income tax return for 1951 with the collector of internal revenue for the sixth district of California, at Los Angeles.

Petitioner Gladys M. Marco is a party to these proceedings by reason of the community property laws of California and by reason of having filed a joint return with her husband.

Petitioner Vincent A. Marco, who will sometimes hereinafter be referred to as petitioner, is an attorney at law in Beverly Hills, California. In the years prior to 1943, he conceived and developed a certain type of indicator light known as "Press to Test," which permitted the testing of an internal lighting circuit without the removal of the bulb and its replacement with a bulb known to be in satisfactory working condition. Applications for patents on the device and improvements were made in 1943 and 1944 and resulted in three patents issued to Marco on July 29, 1947.

On December 12, 1944, petitioner entered into a licensing agreement with Signal Indicator Corporation, hereinafter sometimes referred to as Signal, a New York corporation, granting to the latter the sole and exclusive right and license to manufacture, sell, and distribute the indicator lights and any improvements thereon throughout the entire United States east of the Mississippi River for a period of 5 years. He expressly reserved the right to manufacture, sell, and distribute the lights west of the Mississippi River. In consideration of the license he was to receive 10 per cent of the gross selling price on sales made by licensee. The agreement contained the usual provisions in regard to payment, selling price, and rights of licensor in the event of default. All amounts received by petitioner from Signal under this agreement were reported as royalty income, taxable at ordinary rates.

At approximately the same time, petitioner entered into an agreement with Searle Aero Industries, Inc., sometimes hereinafter referred to as Searle, a California corporation, dated December 29, 1944, granting similar rights to the latter corporation to manufacture, sell, and distribute the indicator lights west of the Mississippi River. The two agreements are substantially identical with the exception that petitioner was to receive payments under the Searle agreement of 9 per cent of the gross selling price of the lights. All payments received by petitioner under the Searle agreement were also reported as ordinary income because of the 5-year term of the agreement.

Subsequently, Searle defaulted in the performance of its agreement and the same was canceled. On December 28, 1949, petitioner granted, assigned, and sold to Marco Industries Company, sometimes hereinafter referred to as Marco Industries, a California corporation, the sole and exclusive right to manufacture, make, use, and sell devices embodying the inventions in that portion of the United States west of the Mississippi River for a period of time equal to the life of the patents and any continuations, extensions, or renewals thereof. In consideration of the rights sold, petitioner was to receive 10 per cent of the sales price of each patented device sold by Marco Industries. All sums received by petitioner under this agreement have been reported as proceeds from the sale of a capital asset and treated as long-term capital gain under section 117 of the 1939 Code, for the reason that petitioner parted with all substantial rights in the patents for the full life thereof in a specified geographical part of the United States.

The agreement of December 12, 1944, with Signal was extended for an additional 5 years from its original expiration date of December 12, 1949. Thereafter, Signal assigned all of its rights under the agreement, as extended, to Dial Light Co. of America, Inc., sometimes hereinafter referred to as Dial Light. On May 4, 1950, the original licensing agreement, as extended, was further modified by an agreement between petitioner and Dial Light in the following particulars:

1. The original agreement was to continue in full force and effect for a period of time equal to the life of the youngest patents referred to in the agreement, as if that period of time had been originally set forth.

2. Dial Light, in addition to the rights previously granted to manufacture, make, and sell the devices, was granted the right to use the same.

Consideration for the modification was a loan from Dial Light to petitioner. In all other respects the original agreement with Signal was continued unchanged, including the right to receive from Dial Light 10 per cent of the gross selling prices on sales made by Dial Light.

It is petitioners' contention that all payments received from Dial Light subsequent to May 4, 1950, represent proceeds from the sale of a capital asset and are entitled to a long-term capital gain treatment for the reason that the effect of the agreement of May 4, 1950, was to convert what had been previously only a licensing agreement into an outright sale of the patents in a specified portion of the United States.

During 1951, petitioner received from Marco Industries, $50,590.91, which was reported on the joint return as long-term capital gain, and $28,339.68 from Dial Light which was reported as ordinary income.

Petitioners did not hold the devices primarily for sale to customers in the ordinary course of trade or business and the devices had been reduced to actual practice in 1947, when the patents were granted.

The portion of petitioners' tax for the calendar year 1951, which petitioners contend should be refunded, was paid within 3 years before the filing of a claim for refund with the district director of internal revenue at Los Angeles on March 10, 1954, and/or the mailing of a notice of deficiency to petitioners on April 23, 1954, and the claim was filed within 3 years from the time of filing the return for said year.

It will be noted that there is no issue in this proceeding but that the patents owned by the petitioner prior to their transfer were capital assets and there is no issue but that petitioner owned and held them more than 6 months prior to the dates of their transfer. The sole issue is whether the transfers in question were mere licenses to manufacture, sell, and use under petitioner's patents and the royalties paid him thereunder are rentals for the use of his inventions and are taxable to petitioner as ordinary income, as the Commissioner has determined in his deficiency notice; or whether the transfers by petitioner were sales of his inventions and the royalties received in 1951 were purchase price payments to petitioner for his inventions and taxable as capital gains under the provisions of section 117.

Petitioners state the issues in their brief, as follows:

(1) Whether payments received by petitioners in the year 1951 from Marco Industries Company, a California corporation, in the amount of $50,590.91, are to be treated as royalty income from the licensing of patents or as proceeds from the sale of patents, taxable as long-term capital gain under the provisions of Section 117 of the Internal Revenue Code of 1939.

(2) Whether payments received by petitioners in the year 1951 from Dial Light Co. of America, Inc., a New York corporation, in the amount of $28,339.68, are to be treated as royalty income from the licensing of patents\or as proceeds from the sale of patents, taxable as long-term capital gain under the provisions of Section 117 of the Internal Revenue Code of 1939.

## Issue 1.

We shall first take up and decide Issue 1, as stated by petitioners in their brief.

It is now well established by the weight of authority that the grant of the exclusive right to manufacture, use, and sell a patented article constitutes a sale of the patent rights with the proceeds taxable as long-term capital gain, provided (1) the invention constitutes a capital asset in the hands of the grantor, and (2) it was held by the

grantor for the required period. Proceeds from such a grant constitute long-term capital gain income whether payment is made in a lump sum or over a period of years based on the use of the invention by the grantee. This was what we held in *Edward C. Myers*, 6 T. C. 258. That case has been frequently cited and followed by us. In our decision in that case, we based it largely on the Supreme Court's decision in *Waterman* v. *Mackenzie*, 138 U. S. 252. This latter case was not a tax case but did deal with the question as to when a patent agreement amounted to a mere license and when it amounted to a sale.

There are many other cases dealing with the same subject as we dealt with in the *Myers* case, *supra*, and holding the same way. See *Kronner* v. *United States*, (Ct. Cl., 1953) 110 F. Supp. 730; *United States* v. *Carruthers*, (C. A. 9, 1955) 219 F. 2d 21. In this last case, the court, in holding for the taxpayer, distinguished two of the cases which are relied upon by the Commissioner to support his position in the instant case. The court, in distinguishing these two cases, said:

The first, *Bloch* v. *United States*, 2 Cir., 200 F. (2d) 63 was a case involving taxation of non-resident aliens and does not mention § 117. However, it is interesting to note that the court in the *Bloch* case distinguished its own prior decision in *Commissioner* v. *Hopkinson*, 126 F. 2d 406 on the basis that the rights of a non-resident alien were not involved in the *Hopkinson* decision. The *Hopkinson* case held, contrary to the government's position in that case and in the case at bar, that royalties received subsequent to a transfer of patents as consideration therefor were taxable as long-term capital gains under § 117.

The second case cited was *Broderick* v. *Neale*, 10 Cir., 201 F. (2d) 621, which considered an agreement that did not transfer the *use* of the patented articles and which terminated in one year instead of extending to the end of the term of the patents transferred.

One of the latest cases in which the Tax Court has dealt with this question is *Ernest E. Rollman*, 25 T. C. 481. While that case was decided in favor of the Commissioner, it did not question in any way the correctness of our decision in *Edward C. Myers*, *supra*, and other cases which have followed it. In the *Rollman* case, *supra*, we decided against the taxpayers on the ground that the transfer of the patent did not transfer the right of its *use*. We said: "The agreement here in question conveys exclusively to Rikol only the right to manufacture and sell shoes made by Rikol under the patented process." Under these circumstances, we held that the amounts received pursuant to the agreement were royalties derived from a licensing agreement and not long-term capital gain from the sale of a capital asset, since the contract did not effect a transfer of all the rights of the patentees, i. e., the right to make, the right to use, and the right to vend.

In the instant case, the transfer from petitioner to Marco Industries expressly states:

First Party hereby grants, assigns and sells to Second Party the sole and exclusive right to manufacture, make, use and sell devices embodying the inventions disclosed or claimed in the MARCO PATENTS * * *

Thus it seems clear that the transfer meets all the tests laid down by the Supreme Court in *Waterman* v. *Mackenzie, supra,* and which were applied in *Edward C. Myers, supra,* and other cases which have held the same way.

On the authority of the foregoing cited cases, we decide in petitioners' favor on Issue 1 and hold that the $50,590.91 received by petitioner in 1951 from Marco Industries is to be treated as proceeds from the sale of patents and is taxable as long-term capital gain under the provisions of section 117.

## *Issue 2.*

We think the decision on Issue 2 must be the same as on Issue 1.

It is true that petitioners on their joint income tax return treated the $28,339.68 received in 1951 from Dial Light Co. of America, Inc., as ordinary income and paid tax on that basis. However, the fact that they so treated it on their return does not estop them from alleging in their petition, as they have done, that they erroneously so treated it and overpaid their taxes by reason thereof.

The Commissioner does not contend that petitioners are estopped from making this contention. He makes substantially the same argument against treating this $28,339.68 as having been received from the sale of patents as he did of the $50,590.91 which petitioner received from Marco Industries. In other words, the Commissioner strongly contends that the $28,339.68 received by petitioner from Dial Light was merely patent royalties which petitioner received for the use of his patents and is taxable as ordinary income.

It is true, of course, that petitioner in prior years reported as royalty income, taxable at ordinary rates, all amounts received by him under the original agreement with Signal. That fact has been stipulated. But this was so because the license had only a 5-year term to run and did not provide for the *use* of the patent. In other words, that agreement did not constitute a sale of the patent under the adjudicated cases and petitioner did not so contend. However, it is now stipulated that:

By Agreement dated May 4, 1950, between VINCENT A. MARCO and DIAL LIGHT CO. OF AMERICA, INC., the term of the Agreement with SIGNAL INDICATOR CORPORATION, * * * as extended, was further extended for the period of time equal to the life of the youngest of the patents referred to in said Agreement, and said DIAL LIGHT CO. OF AMERICA, INC., was granted the *right to manufacture, make, use and sell* the devices during the extended term as provided in said Agreement. * * * [Emphasis supplied.]

It was under this latter agreement that petitioner made with Dial Light in 1950 that the $28,339.68 here involved was paid to petitioner in

1951. In view of these facts, we hold that the $28,339.68 was received by petitioner as proceeds from the sale of patents and is taxable as long-term capital gain under the provisions of section 117.

Section 1235 of the Internal Revenue Code of 1954 specifically provides that with specified exceptions, such payments as are here involved, received in 1954, and subsequent years, will receive capital gains treatment in the hands of the inventor, whether he is an amateur inventor or is engaged in the business of invention. However, both parties are agreed that this section of the 1954 Code is not applicable here because it is by its own terms applicable only to amounts received in taxable years beginning after December 31, 1953. We, therefore, do not base our decision on section 1235 of the 1954 Code but upon the adjudicated cases which we have cited and upon which we rely.

*Decision will be entered under Rule 50.*