ROSE MARIE REID, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 51225.   Filed June 21, 1956.

*Arthur McGregor, Esq., Charles J. Higson, Esq.,* and *Stafford R. Grady, Esq.,* for the petitioner.

*John J. Burke, Esq.,* for the respondent.

628

## OPINION.

RAUM, *Judge:* The Agreement of Settlement of April 20, 1949, between petitioner and the corporation provided for two series of payments. By paragraph 1 petitioner purported to grant to the corporation the exclusive and continuing right to use her name and patents in the United States in consideration of payments equal to 1 per cent of net sales. This provision was not limited as to time and in no way was contingent upon rendition of services by petitioner. On the other hand, paragraph 2 provided for the employment of petitioner as a designer, with annual compensation equal to 2 per cent of net sales up to $1,000,000 and 1½ per cent of net sales in excess of that amount. The payments required by paragraph 2 were plainly compensation and were geared to the rendition of services. However, the payments in paragraph 1 were entirely independent of any services to be rendered, and were to continue regardless of petitioner's performance of any services. The paragraph 2 payments are not involved herein. The only question before us is whether the payments called for by paragraph 1 are to be treated as ordinary income rather than as capital gain. Two issues are presented in this regard, first, whether the payments were in fact made in respect of petitioner's name and patents rather than for services, and second, whether, assuming that they were made in respect of the name and patents, they represented the proceeds of a sale entitled to capital gains treatment.

1. We are satisfied that petitioner in fact received the payments in question in respect of her trade name and patents, and not for personal services rendered. Despite the testimony of respondent's witnesses to the contrary the weight of the evidence is overwhelming to the effect that petitioner's name as well as her rights in her inventions were of considerable value both in 1946 and 1949.

Respondent would have us find, in effect, that petitioner, both in 1946 and 1949, freely permitted Californian to use her name and deal with her patents as it deemed in its own best interests, without

compensation of any kind. First, with respect to 1946, respondent would have us believe that petitioner agreed to pay the same amount of cash for her 50 per cent stock interest as did Kessler, and at the same time either completely surrendered her name and patents or permitted Californian to deal with them with a free hand. The only conceivable offsetting consideration for this would be the undertaking by Kessler to arrange whatever financing should prove necessary. Then, in 1949, believing herself to have been the victim of a fraud, and represented by counsel protecting her interests, she again gratuitously surrendered title or at least a substantial part of her rights in her trade name and patents in the United States. The record satisfies us that nothing of the sort occurred.

First, we believe to be true the version of petitioner rather than that of Kessler as to the substance of the 1946 agreement. We are convinced that in fact petitioner was to receive 50 per cent of the stock of Californian solely in respect of her name, patents, and patent applications. And second, we cannot but be convinced that the arrangement entered into in 1949 was to the effect that, as provided in the agreement between petitioner and Californian, petitioner was to receive the sums at issue here in respect of the foregoing property. The agreement so states and we believe it to be in accord with the substance of the actual understanding of the parties. We do not find credible the testimony of respondent's witnesses to the contrary. We are convinced that in 1949 petitioner, represented by counsel, was asserting a bona fide claim of a right to cut off Californian completely from any rights with respect to valuable property interests. We do not believe that she would or did surrender such claim gratuitously. For the foregoing reasons, and our evaluation of the evidence before us, we conclude that the amounts in question were received not as compensation for services, but as consideration for rights granted, surrendered, or transferred by petitioner in her name and inventions, the nature of which we shall discuss in greater detail hereinafter.

2. In order for petitioner to prevail she must establish three things. First, she must prove that the property in question constituted capital assets. Second, the property must have been held for over 6 months prior to the transaction in question. And third, that transaction must be shown to have constituted a "sale or exchange" within the meaning of section 117 of the Internal Revenue Code of 1939. *Kronner* v. *United States*, 110 F. Supp. 730 (Ct. Cl.).

Our finding that petitioner's trade name and patents were not held by her for sale to customers in the ordinary course of her trade or business establishes that such property constituted capital assets in her hands within the meaning of section 117 (a). Cf. *Seattle Brewing & Malting Co.*, 6 T. C. 856, affirmed 165 F. 2d 216 (C. A. 9) ; *Rainier*

*Brewing Co.*, 7 T. C. 162, affirmed 165 F. 2d 217 (C. A. 9) ; *Kronner* v. *United States, supra.* It is also abundantly clear from the record that the property in question was held by her well in excess of the holding period required by section 117 (a) (1) (4).

In view of the foregoing the only question remaining is whether there was a "sale or exchange" of that property, as contended by petitioner, or a mere license thereof, as urged by respondent.

An exclusive perpetual grant of the use of a trade name, even within narrower territorial limits than the entire United States, is a disposition of such trade name falling within the "sale or exchange" requirements of the capital gains provisions of the 1939 Code. *Seattle Brewing & Malting Co., supra,* at p. 873; *Rainier Brewing Co., supra.* And the grant of the exclusive right to make, use, and sell an invention throughout the United States or a specified area therein constitutes an assignment of the patent and not a mere license. *Waterman* v. *Mackenzie,* 138 U. S. 252, 256; *Watson* v. *United States,* 222 F. 2d 689 (C. A. 10) ; *Arthur C. Ruge,* 26 T. C. 138; *Kimble Glass Co.,* 9 T. C. 183; *Vincent A. Marco,* 25 T. C. 544, on appeal (C. A. 9).

Nor is the question governed by the use of particular words of art. The transaction suffices as a sale or exchange if it appears from the agreement and surrounding circumstances that the parties intended that the patentee surrender all of his rights in and to the invention throughout the United States or some part thereof, and that, irrespective of imperfections in draftsmanship or the peculiar words used, such surrender did occur. *Arthur C. Ruge, supra; Commissioner* v. *Celanese Corp.,* 140 F. 2d 339 (C. A., D. C.) ; *Halsey W. Taylor,* 16 T. C. 376, 383; *Watson* v. *United States, supra; Allen* v. *Werner,* 190 F. 2d 840 (C. A. 5) ; *Claude Neon Lights, Inc.,* 35 B. T. A. 424, 427. Even the fact that an agreement may be termed a "license" or the parties thereto "licensor" and "licensee" has been denied determinative effect. *Kronner* v. *United States, supra,* at p. 734; *Watson* v. *United States, supra; Kimble Glass Co., supra.*

And finally, payment for the transfer need not be in the form of a lump sum in order to constitute capital gain, but may take the form of a percentage of sales or profits, or an amount per unit manufactured or sold, or any combination of the foregoing. *Kenyon* v. *Automatic Instrument Co.,* 160 F. 2d 878 (C. A. 6) ; *Kronner* v. *United States, supra; Commissioner* v. *Hopkinson,* 126 F. 2d 406 (C. A. 2) ; *Halsey W. Taylor, supra,* at p. 384; *Watson* v. *United States, supra; Allen* v. *Werner, supra; Edward C. Myers,* 6 T. C. 258; *Carl G. Dreymann,* 11 T. C. 153; *United States* v. *Carruthers,* 219 F. 2d 21 (C. A. 9) ; *Hofferbert* v. *Briggs,* 178 F. 2d 743, 744 (C. A. 4) ; *Massey* v. *United States,* 226 F. 2d 724, 727 (C. A. 7); *Vincent A. Marco, supra,* at p. 548.

The record satisfies us that the parties intended that petitioner should assign all of her United States rights in her trade name, patents, and patent applications to Californian and that she in effect did just that. Although the 1949 agreement does not expressly include the word "use," a reading of the entire agreement, together with the facts surrounding the transactions, amply convinces us that a complete assignment was intended and made, and that the exclusive right to "use" petitioner's name and patents throughout the United States for the full period of their existence was transferred to Californian. Cases cited by respondent are distinguishable in that it was there thought that the owner's rights had not been completely transferred. Cf. *Broderick* v. *Neale*, 201 F. 2d 621 (C. A. 10) ; *Ernest E. Rollman*, 25 T. C. 481; *Lynne Gregg*, 18 T. C. 291, affirmed 203 F. 2d 954 (C. A. 3) ; *Cleveland Graphite Bronze Co.*, 10 T. C. 974, affirmed 177 F. 2d 200 (C. A. 6).

We do not deem it important that petitioner transferred her interests in 1946, whereas the agreement giving rise to the payments in question was executed in 1949. Even in the absence of any dispute as to whether Californian's rights to petitioner's trade name and inventions were perfected or indefeasible, the payments in question were made in respect of the transfer of such rights. Whether they be viewed as payments for finally perfecting those rights, or additional consideration for that to which Californian was already entitled, they were in consideration of the transfer of the trade name and inventions, and not for personal services, and represent capital gains to petitioner. *Hofferbert* v. *Briggs*, *supra*.

In the instant proceeding, however, it is clear that there was in fact a serious dispute as to the perfection of Californian's title, or as to its rights to retain title as against petitioner. Respondent has attempted to discuss the merits of petitioner's claim of a right to rescind the 1946 agreement and recover her assets. He argues that she could not. In our opinion, it is of no moment whether petitioner would have prevailed had she litigated the matter to final judgment. We cannot say, despite respondent's arguments, that it is manifestly clear that she could not. The determinative factor is that petitioner believed in good faith that she could, and was so advised by counsel. Her claim was certainly not frivolous, and was taken seriously enough by Kessler and Californian. Had she commenced litigation seeking rescission and settled her suit for the payments in question, we would have no doubt that those payments would be entitled to treatment as capital gains. *Albert J. Goldsmith*, 22 T. C. 1137; *Margery K. Megargel*, 3 T. C. 238. Here commencement of an action to rescind was rendered unnecessary by the willingness of the parties to settle their differences shortly after

retention of counsel by petitioner. Nevertheless, the underlying claim remained the same, i. e., title to the trade name and patents, and amounts received by petitioner in settlement thereof must be held referable thereto. Cf. *Lyeth* v. *Hoey*, 305 U. S. 188.

The final contention of respondent with which we must deal is that in California a trade name may not be sold separately from the business. Whatever the soundness of such argument under California jurisprudence, it can have no effect upon our result here. First, it has no applicability to the transfer of patents and patent applications. And with respect to the trade name itself, the fact is that petitioner did transfer to Californian a right hitherto held by her alone, the sole right to use her name in the swimsuit industry in the United States and reap the benefit thereof. Californian has at all times used such name as its own and has registered it as its property with the United States Patent Office. California rules respecting the transfer of a trade name cannot change the nature of the payments into payments for services for Federal income tax purposes, when they were not in fact made for services rendered. Whatever the defects or incapacities of such transfer (we do not intend here to rule upon that question) we are convinced that she received the payments in respect of such transfer, and not for personal services. Hence, respondent erred in determining the amounts thereof to be taxable as ordinary income.

*Decision will be entered under Rule 50.*