Estate of Don H. Finkle, Deceased, Gladys E. Finkle, Executrix, and Gladys E. Finkle, Surviving Wife v. Commissioner.
Estate of Finkle v. Commissioner
Docket No. 55277.
United States Tax Court
T.C. Memo 1956-148; 1956 Tax Ct. Memo LEXIS 143; 15 T.C.M. (CCH) 743; T.C.M. (RIA) 56148; June 28, 1956
*143 Decedent, Don H. Finkle, was the owner of seven patents which he had held for more than six months and which were capital assets in his hands. In 1947, he assigned to a corporation the exclusive right to make, use, and sell the devices covered by such patents for the life thereof. Held, such assignment was a sale of the patents, and payments received by decedent in 1951 under the assignment were taxable as capital gains and not as ordinary income. Edward C. Myers, 6 T.C. 258 (1946), followed. Curtis C. Legerton, Esq., 6331 Hollywood Boulevard, Hollywood, Calif., for the petitioners. Richard W. Janes, Esq., for the respondent. RICE
Memorandum Opinion RICE, Judge: This proceeding involves a deficiency in income tax in the amount of $10,171.90 and an addition to tax under section 294(d)(2) *144 of the 1939 Code in the amount of $565.51 determined by the respondent for the year 1951, which addition has been conceded by the respondent. The sole issue is whether payments which decedent, Don H. Finkle, received from the licensee of patents were royalties, taxable as ordinary income or were taxable as the proceeds from the sale of capital assets under the provisions of section 117 of the 1939 Code. Concessions were made with respect to all other issues which will be taken into account under a Rule 50 computation. [Findings of Fact] All of the facts were stipulated, are so found, and are incorporated herein by this reference. Don H. Finkle (hereinafter referred to as the decedent) and his wife, Gladys E. Finkle, were residents of North Hollywood, California, during 1951. Decedent died on October 27th of that year. His widow was duly appointed and qualified as executrix of his estate and filed a joint income tax return for herself and decedent for 1951 with the former collector of internal revenue for the sixth district of California. Prior to 1946, decedent perfected six inventions covering the making of clamps and fasteners on which he secured United States patents. *145 In January 1946, he secured an assignment of another patent from its inventor. In November 1946, the Wedgelock Company was incorporated under the laws of California; 80 per cent of its voting stock was owned by decedent and the remaining 20 per cent by his son. On or about January 2, 1947, decedent granted Wedgelock an exclusive license for the remainder of the term of each of the afore-mentioned patents to make, use, and sell the devices thereby covered. Pertinent parts of the agreement with reference to the assignment and payments which decedent was to receive are set forth below: "1. Licensor hereby grants to the licensee and to its successors and assigns, upon the terms and conditions and with the limitations hereinafter set forth, the exclusive license for the remainder of the term of each of the aforesaid Letters Patent, or any reissue, division or extension thereof, to make, use and sell under each of the aforesaid Letters Patent and under any reissues, divisions or extensions thereof, the device or devices affected by said Letters Patent and each of them. * * *
"3. The licensee agrees to pay to the licensor or his personal representatives, heirs, devises, successors *146 or assigns, a license fee or royalty upon any or all devices affected by any one or more of said Letters Patent which it makes, sells, licenses or puts into use during the continuance of this license, 5% of the net bona fide wholesale selling price thereof on sales made by the licensee. Said royalty shall be paid monthly within 15 days after the end of each calendar month. * * *
"8. During the year 1947, licensor and licensee agree that there shall be no minimum royalty payable under this license. During the year 1948, the minimum royalty shall be $500.00 per month, and licensee agrees to pay to licensor such minimum. Commencing with the year 1949, licensee shall pay a minimum royalty of $600.00, per month. In the event the royalty paid, based upon paragraph 3. of this license, is less than the above provided minimums, licensee agrees to pay the deficiency each month, provided that at the end of each calendar year, an accounting shall be had so that the total royalty during that year shall average the minimum." [Opinion] On the return which was filed by Gladys E. Finkle for 1951, the payments received from Wedgelock in that year were reported as ordinary income. Subsequently, *147 a refund claim was filed on the grounds that such payments were the proceeds from the sale of capital assets and were subject to tax only as capital gains. The respondent noted, on brief, that his position here that the payments in question were taxable as ordinary income rather than as capital gains was based on the same arguments which he had made to the Court in Vincent A. Marco, 25 T.C. 544, filed December 16, 1955, on appeal C.A. 9, April 18, 1956; and in Edward C. Myers, 6 T.C. 258 (1946), - cases which are factually indistinguishable from the one before us here. In both of those cases, we held that where the owner of patents granted to a licensee the exclusive right to make, use, and sell the device covered by the patents, there was a sale of capital assets and not a mere licensing agreement, if the patents were held by the owner for more than six months and were not his stock in trade. We, further, held that the payments received under such an agreement were taxable as capital gains rather than as ordinary income. We pointed out in Edward C. Myers, supra, that our holding there seemed amply supported by the Supreme Court's opinion *148 in Waterman v. Mackensie, 138 U.S. 252 (1891), wherein it said, p. 256: "Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions. For instance, a grant of an exclusive right to make, use and vend two patented machines within a certain district, is an assignment, and gives the grantee the right to sue in his own name for an infringement within the district, because the right, although limited to making, using and vending two machines, excludes all other persons, even the patentee, from making, using or vending like machines within the district. * * *" Despite the respondent's argument to the contrary, and his position announced in Revenue Ruling 55-58, 1955-1 C.B. 97 [1954 Code Vol. Transfer Binder [*] 37,102], we continue to believe that our holding in the Marco and Myers cases is correct. Arthur C. Ruge, 26 T.C. , filed April 24, 1956. Since there is no dispute here that the patents which the decedent assigned to Wedgelock were not capital assets in his hands, which he had held for more than six months prior *149 to their sale, we conclude that the payments received from Wedgelock in 1951 were taxable as capital gains and not as ordinary income. Decision will be entered under Rule 50.