ESTATE OF MILTON P. LAURENT, SR., DECEASED, FRANK A. RUDMAN, JOHN J. ROACH, AND RUBY SANDOZ LAURENT, INDEPENDENT EXECUTORS, AND RUBY S. LAURENT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 59767, 61340. Filed May 31, 1960.

*John G. Heard, Esq.*, for the petitioners.
*John J. King, Esq.*, for the respondent.

388

OPINION.

OPPER, *Judge:* The single issue presented here is one which "often becomes a factual question to be decided according to the facts and circumstances of each case and the peculiarities inherent in each patent." *Lawrence* v. *United States*, (C.A. 5) 242 F. 2d 542, 545. While it thus necessarily follows that other cases may involve varying factual situations, it is nevertheless true that the principles announced in several of them are dispositive of our problem.

Decedent transferred certain rights under a patent application already on file, which were nonexclusive as to the entire sweep of the application but were exclusive throughout the United States to make, use, and sell to the extent that the conception involved was susceptible of employment in the manufacture of gate valves. A short time after this transfer decedent filed a further application limited to use in gate valves, and from time to time thereafter and prior to the years now before us, the parties expressly or by their conduct defined and construed the underlying agreement so that by the critical date it became apparent that the transferee had all the rights in the patent to the extent of their use for the manufacture of gate valves; and had no other rights, if any, which existed in the devices covered by the original patent. The patents themselves were not in existence when the instant tax years began but were issued during that period.

It seems to us that on the authority of *United States* v. *Carruthers*, (C.A. 9) 219 F. 2d 21, respondent cannot succeed. At least it must be said that the present transfer covered exclusive rights for the gate valve industry and we have found as a fact, at respondent's request, that decedent understood the precise meaning of the word "gate valve." In the *Carruthers* case, the court said (p. 24):

Both parties point to Waterman v. Mackenzie, 138 U.S. 252, 11 S. Ct. 334, 34 L. Ed. 923 as the classic case in this field. * * *

Counsel for appellant admitted that under the Waterman decision it is not necessary that the patentee transfer all his rights in the patents for the result to be an assignment. Clearly, the transfer can be limited in area. However, in oral argument on appeal it was urged that even though there could be an assignment to a specified area, for the transfer to be an assignment under the Waterman decision it must be of "whole" patent rights to that limited area; and, a transfer to *an industry* (even though unlimited in area) must receive different tax treatment. The cases cited by appellant do not, in our view, support the argument tendered in this paragraph. Counsel for appellant admitted in oral argument that no case holds that a transfer of a patent for use in an industry would not, for that reason, be a sale within the meaning of § 117.

Appellant's chief argument in this case is that this transfer is to *an industry* rather than to *a geographical area* and consequently does not strictly comply with the Waterman test; therefore the transfer was a *license* and not an *assignment*. For example, it was argued that a transfer of an "exclusive right to make, use and vend the invention on the Pacific Coast" would be an assignment and that the proceeds would receive capital gains treatment; whereas, a transfer of an "exclusive right to make, use and vend the invention in the tuna industry" would be a license and the proceeds would be taxable as ordinary income.

No explanation has been attempted by appellant, nor has it proffered any policy argument as to why a transfer enveloping *an industry* should be given such different tax treatment from a transfer encompassing an area. We are not convinced that it would be reasonable or necessary for this court, in the tax case now before us, to strictly and literally apply the text announced in an infringment [*sic*] suit in the nineteenth century. We think that this is particularly true when the court in the Waterman case was not presented with an industry-wide transfer. Furthermore, if the Waterman test is applied, we believe the taxpayers would pass this test.

\* \* \* \* \* \* \*

"Whole," in the Waterman test apparently means the inclusive rights to "make, use and sell." In the case at bar the transfer did include the rights to make, use and sell and would therefore appear to meet the test of "whole" patents laid down in the Waterman case.

But in any event we think respondent's contention has, in fact, placed him in a dilemma. Either the original patent application was one which could be considered to cover other areas in addition to gate valves, or it was not. If the former, this case would be similar to *Merck & Co.* v. *Smith*, (C.A. 3) 261 F. 2d 162, 163, 165. There—

[t]wo employees of Sharp & Dohme in 1939 invented and reduced to practice certain chemical compounds colloquially called sulfa drugs \* \* \*. Later a patent issued from the patent office. While the patent application was pending [the patentee] \* \* \* entered into an agreement \* \* \* granting \* \* \* the exclusive right to make, use and sell \* \* \* sulfadiazine \* \* \*. Sulfadiazine was one of the claims in the generic patent \* \* \*

\* \* \* \* \* \* \*

\* \* \* One generic patent was issued to the original patentee. But there were species claims and the species were separate inventions. A single patent may issue for two or more separate inventions as said in Special Equipment Co. v. Coe, 1945, 324 U.S. 370. \* \* \*

In holding that the transfer of the sulfadiazine rights was a sale entitled to capital gains treatment, the court said:

The analogies point in this direction. One who owns a single invention patent may "sell" its use in a particular territory or industry, United States v. Carruthers, 9 Cir., 1955, 219 F. 2d 21, or for one industrial use only, First National Bank of Princeton v. United States, D.C.D.N.J. 1955, 136 F. Supp. 818, 823–824. \* \* \*

\* \* \* While the immediate point in this case is evidently novel we think all the analogies permit the type of transfer that the taxpayer made here to be treated as a sale.

See also *Kavanagh* v. *Evans*, (C.A. 6) 188 F. 2d 234.

If, on the other hand, no substantial use for the underlying patent existed except in the gate valve field, then by his transfer of rights under the application exclusive in their relation to gate valves, decedent actually parted with all substantial rights under the underlying patent. See *United States* v. *Carruthers, supra* at 25. If so, even on respondent's theory, this would be an exclusive transfer of the "whole" patent and lead to the same result. And it seems to be recognized by the parties that no income was ever received or likely to be received by decedent except from the original W–K–M agreement.

These conclusions are as unassailable whether we presume that the subsequent application was an improvement patent to which the assignee was entitled by the reference to "improvements" under the original agreement, or whether it was a restrictive application limited, as in the *Merck* case, to the use of the underlying patent in the manufacture of a specific product. Even if the improvements envisaged in the second application were not covered by the original assignment, the parties by their subsequent conduct made it clear that the assignee's rights therein were exclusive, and any payments made for rights under the subsequent patent would hence be entitled to capital gains treatment also. *Best Lock Corporation*, 31 T.C. 1217.

And, of course, it is not significant that the patents had not yet been issued when the original assignment was made, nor, indeed, when the critical tax period commenced. The same result would be required if the device had merely been conceived and there had not even been an application for one or more patents. See *Edward C. Myers*, 6 T.C. 258, 265; *F. H. Philbrick*, 27 T.C. 346, 356. There are apparently no other requirements of section 117 upon which respondent relies for his contentions,[1] and we observe none. Accordingly, we decide the issue in petitioners' favor. To compute amounts under claimed overpayments,

*Decisions will be entered under Rule 50.*

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES. [I.R.C. 1939, as amended by Pub. L. No. 629, 84th Cong., 2d Sess. (June 29, 1956).]

(q) TRANSFER OF PATENT RIGHTS.—

(1) GENERAL RULE.—A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—

(A) payable periodically over a period generally coterminous with the transferee's use of the patent, or

(B) contingent on the productivity, use, or disposition of the property transferred.

\*       \*       \*       \*       \*       \*       \*

(4) APPLICABILITY.—This subsection shall apply with respect to any amount received, or payment made, pursuant to a transfer described in paragraph (1) in any taxable year beginning after May 31, 1950, regardless of the taxable year in which such transfer occurred.