UNITED STATES of America,
Appellee,

v.

Leib BRECHER, Defendant-Appellant.

No. 318, Docket 24438.

United States Court of Appeals
Second Circuit.

Argued March 8, 1957.

Decided April 1, 1957.

Jerome Lewis, New York City, for defendant-appellant.

Paul W. Williams, U. S. Atty. for Southern Dist. of New York, New York City (George C. Mantzoros, Adelbert C. Matthews, Jr., Robert Kirtland, Asst. U. S. Attys., New York City, of counsel), for appellee.

Before MEDINA and WATERMAN, Circuit Judges, and GALSTON, District Judge.

GALSTON, District Judge.

Appellant was convicted, upon a verdict of guilty rendered by a jury, of the crime of conspiracy to export gold bullion, in violation of Section 95a, Title 12 U.S.C.A.

The indictment contained two counts, the first charging conspiracy to export gold bullion, and the second charging the substantive count of possession of gold bullion. Named as co-defendants were one Jack Joseph (both counts) and Greta Neiman (first count). Two others, Ralph Rothenberg and Frank Joseph, were named as co-conspirators, but they were not indicted.

Only appellant stood trial, co-defendants Neiman and Joseph having pleaded guilty. The possession count was dismissed and the jury disagreed on the remaining conspiracy count. Upon retrial, the appellant was found guilty, convicted and sentenced on the conspiracy count to a term of two years and $500 fine.

In addition to the appeal there is presented, on the alleged ground of newly discovered evidence, an application for an order granting a new trial, or in the alternative, remanding the case to the District Court to permit the appellant to make the motion and be heard thereon in that court.

Greta Neiman testified, as a Government witness, that in November, 1951, appellant asked her if she knew anybody who would be interested in taking a trip to Europe to take over some gold. She introduced her cousin, Ralph Rothenberg, to appellant, and was present at meetings between Rothenberg and appellant, and also at meetings between Rothenberg, appellant and Jack Joseph, at which meetings the three men discussed plans to have Rothenberg smuggle gold out of the country, hidden in an automobile. Joseph testified that in December of 1951 he discussed with appellant "shipping an automobile with gold to France." Appellant told him that he (appellant) had a man who would take the car with the gold to Europe. Joseph went to appellant's apartment and was introduced to Rothenberg, and to Greta Neiman. Joseph accompanied Rothenberg to purchase an automobile, and furnished the down payment for the car which was registered in Rothenberg's name. Joseph further testified that in the next three days he received about a thousand ounces of gold in several packages from appellant, of which he paid for eight hundred ounces; that the rest belonged to appellant, and that he and appellant had agreed they would ship three thousand ounces of gold and share the profit equally between them. Joseph also stated he received additional packages of gold from one Kessler. He also testified that the gold "were plates and bars," in different forms and sizes. Joseph marked the various packages of gold

for identification purposes. According to his testimony Joseph put some of the packages of gold he had received in the car purchased in Rothenberg's name, drove to a parking lot and was in the process of secreting the gold behind a panel in the car when he was arrested by the police. Appellant was not present at the time the arrest occurred, on January 9, 1952. No license had been issued to permit the export of gold by any of the conspirators.

Rothenberg testified to the conversation with Greta Neiman about his taking gold to Europe, meeting Brecher and Joseph, and arranging with Joseph to purchase the car.

■ With respect to the application for a new trial, the new evidence relied upon is directed to the testimony of Greta Neiman that no promises were made to her by anyone connected with the Government that if she cooperated and testified against appellant a suspended sentence would be recommended.

In opposition the Government has submitted an affidavit of Greta Neiman's attorney that the former Assistant United States Attorney who was in charge of the case during the first trial stated to Neiman's attorney that he would not urge the court to impose a jail sentence or contest any plea for a suspended sentence. The affidavit also states the witness Neiman was not present during the conversation with the Assistant United States Attorney, and that she was never told about it. Furthermore, the Assistant United States Attorney trying the Government's case on the second trial states in his affidavit, in effect, that during the trial he had no knowledge of the statement made by the former Assistant to Neiman's attorney.

It seems somewhat difficult to believe that Greta Neiman's attorney would say nothing to her about the attitude of the Government. Admittedly she was very much concerned about the possibility of having to go to jail. Taking the Bernstein and Mantzoros affidavits at face value, if Neiman testified with no knowledge of the conversation between her attorney and the Assistant United States Attorney, the newly discovered evidence would have no bearing on her credibility nor the weight to be attached to her testimony.

Greta Neiman admitted she testified falsely before the grand jury and to other instances of smuggling gold. In general she was very evasive on cross-examination. It is doubtful whether any jury would consider her to be a reliable witness without taking the alleged false testimony into consideration anyway.

The Mesarosh case, Mesarosh v. U. S., 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1, cited by appellant, is distinguishable. There a new trial was granted the defendant on the motion of the Government questioning the credibility of its own witness. The court, in distinguishing its decision from the usual motion for a new trial, initiated by the defense in presenting untruthful statements by a Government witness as newly discovered evidence, had the following to say:

"Such an allegation by the defense ordinarily will not support a motion for a new trial, because new evidence which is 'merely cumulative or impeaching' is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial." 352 U.S. 1, 9, 77 S.Ct. 1, 5.

■ As to the appeal, contrary to appellant's contention, the failure of the Government to produce the confiscated gold or explain the failure to do so is not error. In the proof of the conspiracy it was not necessary to produce the "corpus delicti." This court has declared that circumstantial evidence of the "corpus delicti," if convincing, is sufficient. United States v. Adelman, 2 Cir., 107 F. 2d 497, 498. It was for the jury to determine the credibility and weight to be given Joseph's testimony. Pennacchio v. United States, 2 Cir., 263 F. 66, certiorari denied 253 U.S. 497, 40 S.Ct. 588, 64 L. Ed. 1031; United States v. Tramaglino, 2 Cir., 197 F.2d 928, certiorari denied 344 U.S. 864, 73 S.Ct. 105, 97 L.Ed. 670.

 Appellant also alleges the trial court erred in permitting the Government to elicit from Joseph that he had made a notation in his address book that he had purchased gold from appellant. It was appellant's counsel who, for the purpose of impeaching the witness by reading from the record of the first trial, first referred to the records of gold purchases made by Joseph. The Government argues that the redirect examination was necessary to place in context and to clarify the witness's testimony on the first trial which had been read on cross-examination, because by reading only a portion of the witness's testimony on the first trial the inference was created that since he kept books and records with regard to gold purchases he continually engaged in illegal gold transactions.

 That the gold in question came within the definition of gold bullion under the statute involved was testified to by Joseph in describing the gold as "plates and bars." It is true that no expert testimony was presented that the gold bars here were gold bullion within the meaning of the statute, but such testimony was not required in the circumstances of this case. See United States v. Tramaglino, supra, 197 F.2d at page 932.

 Appellant contends there was error in allowing testimony between the witnesses Neiman and Rothenberg after Joseph's arrest on the theory that with the arrest the conspiracy was at an end. These conversations had to do with instructions from appellant to Neiman to tell Rothenberg what to do and what to say to the authorities if questioned, and also to the fact that appellant had put up the money for Rothenberg's bail, and had nothing to do with the furtherance of the conspiracy.

The question is perhaps a close one under the rule of the Krulewitch case, Krulewitch v. U. S., 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790, since the chief object of the conspiracy had come to an end already. However, there is evidence that the statements made by Neiman were made with appellant's authority. Furthermore, there is evidence in the case that appellant had assured Rothenberg at the time they were planning the smuggling operation that if Rothenberg were apprehended he, appellant, would take care of everything. There was evidence, therefore, that an "understanding for continuous aid" was "embraced in the conspiracy." See concurring opinion of Justice Jackson in the Krulewitch case, 336 U.S. 440, 445, 69 S.Ct. 716, 724. This would eliminate the implied continuance of conspiracy theory of which the Supreme Court disapproves.

The trial court's charge to the jury, to which no exception was taken, was complete and fair. The denial to grant defendant's requests to charge cited as error, in the light of the charge was proper.

Despite the fact that the argument on appeal was vigorously presented, we are of opinion from the facts proved, that the judgment of conviction should be affirmed and the motion for a new trial denied.