**Lynn W. STORM and Maxine Storm,**
**Appellants,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 16461.**

United States Court of Appeals
Fifth Circuit.

May 1, 1957.

Frank L. Merrill, Fort Worth, Tex., Sam R. Merrill, Houston, Tex., for appellant.

Grant W. Wiprud, Hilbert P. Zarky, Anthony T. Dealy, Lee A. Jackson, Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., John E. Banks, Asst. U. S. Atty., San Antonio, Tex., Russell B. Wine, U. S. Atty., San Antonio, Tex., on the brief, for the United States.

Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.

JONES, Circuit Judge.

Lynn W. Storm and Maxine Storm, his wife, appeal from an adverse judgment in an action brought by them against the United States for the recovery of income taxes for the years 1949, 1950, 1951 and 1952, which they claim were unlawfully collected. The facts were stipulated. Storm made application on March 18, 1947, for a patent of a device known as a hydraulic jar for removing stuck pipes and other objects from oil and gas wells. The patent subsequently issued. On March 28, 1947, Storm entered into an agreement with Bowen Company of Texas, Inc. Paragraph I of this agreement provided:

> "Licensor [Storm] hereby grants to Licensee [Bowen Company], its successors and assigns, an exclusive license to manufacture, use and sell devices constructed in accordance with said pending application and the patent which may be issued thereon, together with all improvements made in connection therein, throughout the world, for the time during which said application is pending and the full term for which said letters patent may be granted, upon the conditions and subject to certain rights of cancellation, all as hereinafter more specifically set forth."

The Bowen Company agreed to manufacture and sell the devices, to be diligent in promoting sales, to keep accurate records and permit Storm to inspect them at all reasonable times, to pay Storm fifteen per cent. of the net income derived from the sale or rental of the devices. If Bowen Company should fail to make the stipulated payments or discontinue the manufacture and sale of the devices and the default be not timely cured, the agreement could be cancelled by Storm. The Bowen Company was given an unconditional right to terminate the agreement upon thirty days' written notice. Paragraph XIII, the final paragraph of the agreement, provided:

> "In the event Licensor [Storm], during the term of this agreement, shall desire to sell the said invention, or any improvements thereon, or patent relating thereto, he shall give to

Licensee [Bowen Company] first opportunity to purchase the same at a price to be mutually agreed upon, which price shall not be greater than that for which said invention, improvement or patent is offered for sale to any other purchaser."

The payments received by Storm from the Bowen Company were reported and income tax paid thereon as ordinary income. Claiming the instrument should be construed as an assignment rather than a license and that the sums received pursuant to it should have been reported and taxed as capital gains, the Storms filed claims for refund which were rejected and this action followed. The Government claimed that the agreement was a license and that it was not a full assignment nor a sale such as would justify capital gains treatment of the payments received. With this view the court agreed and judgment was entered for the defendant United States. This judgment is before us for review.

This cause had been submitted to the district court some weeks prior to June 29, 1956. Findings of Fact and Conclusions of Law were filed and judgment was entered November 6, 1956. The Act of June 29, 1956, c. 464, 70 Stat. 404, 26 U.S.C.A. (I.R.C.1939) § 117(q) provided:

"(1) *General rule.*—A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, * * * by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—

"(A) payable periodically over a period generally coterminous with the transferee's use of the patent, or

"(B) contingent on the productivity, use, or disposition of the property transferred.

* * * * * *

"(4) *Applicability.*—This subsection shall apply with respect to any amount received, or payment made, pursuant to a transfer described in paragraph (1) in any taxable year beginning after May 31, 1950, regardless of the taxable year in which such transfer occurred."

The Government takes the position before us that because of the provisions of Paragraph XIII, hereinbefore quoted, the Bowen Company may not have received "all substantial rights" to the patent and that we should remand for a finding as to the substantiality of the rights granted, and if need be, for the receipt of evidence to remove the ambiguity the Government finds in the agreement. The pertinent finding of the district court is that the agreement "was not intended by the parties thereto to effect a sale of Storm's rights to the invention and the patent to Bowen Company of Texas, and it did not effect such a sale thereof to that company".

Before us the Government abandons the extreme position which it successfully maintained before the district court. It now concedes that if paragraph I of the agreement stood alone and without anything inconsistent in the agreement, the transfer to Bowen Company would have been of all substantial rights in the patent so as to entitle Storm to capital gains treatment of the moneys received. But, it is urged, paragraph XIII is ambiguous and renders the entire instrument ambiguous and susceptible of being so construed as to permit Storm to defeat the transfer by exercising the reserved right to sell the invention or patent, assuming Bowen Company did not exercise its right to purchase. The Government suggests a remand for the purpose of taking testimony to resolve the ambiguity as was done in Allen v. Werner, 5 Cir., 1951, 190 F.2d 840.

The problem presented is one of construction of the contract and we think the controlling rules are somewhat elementary. It scarcely need be stated that the intention of the parties to a contract is to be ascertained from the instrument as a whole. Corbin on Contracts, Vol. 3, p. 100, § 549; 10 Tex.Jur.

282, Contracts § 164; City of Orlando v. Murphy, 5 Cir., 1936, 84 F.2d 531; American Aviation & General Insurance Co. v. Georgia Telco Credit Union, 5 Cir., 1955, 223 F.2d 206. If there be any variance between clauses the one which contributes most essentially to the contract is entitled to the greater weight, and in the event of conflicts between clauses the provisions of the first clause will prevail. 10 Tex.Jur. 311, Contracts § 179; Osburn v. Smart, Tex.Civ.App., 58 S.W.2d 1073. The rule in the construing of deeds is that, if there be a conflict the granting clause will prevail over other clauses. 14-B Tex.Jur. 590, Deeds, § 140; Hughes v. Gladewater County Line Independent School District, 124 Tex. 190, 76 S.W.2d 471. The same rule should apply to the transfer of rights to a patent. Where the language of the operative words effecting a transfer are clear and their meaning is plain any doubt as to whether the transfer has been restricted or conditioned by a subsequent clause will be resolved against the asserted restriction or condition.

The legislative intent in the enactment of the herein quoted statutory provision is evidenced by the Senate Committee Report on the comparable section of the Internal Revenue Code of 1954. The Committee Report recited:

"The section does not detail precisely what constitutes the formal components of a sale or exchange of patent rights beyond requiring that all substantial rights evidenced by the patent (other than the right to such periodic or contingent payments) should be transferred to the transferee for consideration. This requirement recognizes the basic criteria of a 'sale or exchange' under existing law, with the exception noted relating to contingent payments * * *. To illustrate, exclusive licenses to manufacture, use, and sell for the life of the patent, are considered to be 'sales or exchanges' because, in substantive effect, all 'right, title, and interest' in the patent property is transferred (irre-spective of the location of legal title or other formalities of language contained in the license agreement). Moreover, the courts have recognized that an exclusive license agreement in some instances may constitute a sale for tax purposes even where the right to 'use' the invention has not been conveyed to the licensee, if it is shown that such failure did not represent the retention of a substantial right under the patent by the licensor. It is the intention of your committee to continue this realistic test, whereby the entire transaction, regardless of formalities, should be examined in its factual context to determine whether or not substantially all rights of the owner in the patent property have been released to the transferee, rather than recognizing less relevant verbal touchstones. The word 'title' is not employed because the retention of bare legal title in a transaction involving an exclusive license may not represent the retention of a substantial right in the patent property by the transferor." S.Rep.No.1662, 83rd Congress, 2d Session, 3 U.S. Code Cong. & Adm. News, 1954, p. 5082.

The Congress recognized that the retention of title did not necessarily constitute a substantial right. At the time of the transaction between Storm and the Bowen Company, the patent had not issued. Storm then had an invention, an inchoate right to the patent for which he had applied. His agreement with Bowen Company left him with unsubstantial rights in the invention and in the patent when it was issued. It was these rights which he retained. Had he sold them to a purchaser other than Bowen Company, he would have transferred his right to the specified payments and the right to cancel the agreement upon the happening of the specified events. It was of these unsubstantial residual attributes of ownership which the Bowen Company had a right of refusal or conditional option. We think it would require a distor-

tion of the language used in order to find an ambiguity.

 The moneys received from Bowen Company by Storm under the agreement were entitled to have capital gains treatment rather than being subjected to tax as ordinary income. Lawrence v. United States, 5 Cir., 1957, 242 F.2d 542. For the ascertainment of the proper refund to which the appellants are entitled and for the entry of a judgment therefor, the judgment heretofore entered is reversed and the cause is remanded.

Reversed and remanded.