**CAMCO INTERNATIONAL, INC. and Camco, Inc., Appellants,**

v.

**PERRY R. BASS, INC. and Sid W. Richardson Foundation, Appellees.**

No. 2–95–255–CV.

Court of Appeals of Texas, Fort Worth.

July 18, 1996.

Rehearing Overruled Aug. 29, 1996.

John F. Lynch, Kenneth D. Goodman, Arnold, White & Durkee, Houston, Estil Vance, Jr., Cantey & Hanger, Fort Worth, for Appellants.

William D. Harris, Jr., Harris, Tucker & Hardin, P.C., Dallas, Wesley N. Harris, Tomi Kay Mills, Kelly, Hart & Hallman, P.C., Fort Worth, for Appellees.

Before CAYCE, C.J., and LIVINGSTON and BRIGHAM, JJ.

## OPINION

BRIGHAM, Justice.

Appellants Camco International, Inc. and Camco, Inc. (collectively "Camco") appeal a summary judgment granted for Perry R. Bass, Inc. and the Sid W. Richardson Foundation (hereinafter "Bass–Richardson") in a dispute over whether certain royalty payments were due under United Kingdom patent law. At issue is whether the transfer of rights under the patent from Bass–Richardson to Camco was a license or an assignment. Because we conclude the trial court correctly

interpreted the transfer as an assignment, we affirm the judgment.

## BACKGROUND

In the 1950s, Sid Richardson funded development and patenting of Harold McGowen, Jr.'s work on an oil production device called the "side-pocket mandrel." McGowen initially worked for Richardson and later became Chief Engineer and President of Camco. Under a 1959 contract, Camco agreed to pay Bass and Richardson royalties for sales of the mandrels. The 1959 agreement also required Camco to assign patents obtained on additional inventions in the same technological area to Bass and Richardson under a so-called "grant-back" clause.

During the 1970s, grant-back clauses became illegal, and Richardson decided to enter into a new agreement with Camco to delete the grant-back clause. In 1974, Bass–Richardson signed a contract with Camco which covered patents from several different countries, including the United Kingdom. The 1974 contract stated that it was intended to supersede all prior agreements and recited that Camco "sells, assigns and transfers to [Bass] an undivided 5/18ths, and [to the foundation], an undivided 13/18ths, of all right, title, and interest, ..." The 1974 agreement then stated that Bass–Richardson:

> [G]rant and convey unto [Camco] the exclusive right and license throughout the world to make, charge for the use of, sell, rent and install equipment and the methods of use under the ... patents described above in this paragraph for the respective life or lives thereof, and to grant sublicenses to others. . . .

At the time the 1974 agreement was executed, the life of a British patent was sixteen years. As a result, Camco was obligated to pay royalties on products made or sold in the UK until the sixteen-year anniversary date of each licensed UK patent. Upon the expiration of the UK patents, Camco would no longer have to pay royalties to Bass–Richardson.

In 1977, the UK amended its patent laws, extending the terms of some patents from sixteen years to twenty. After learning of the amendment, Camco continued to pay roy-

alties under the UK patents after the sixteen-year anniversary. In 1991, Camco learned that the amended UK patent law exempted certain licensees from the four-year extension and concluded that because the contract with Bass–Richardson predated the UK amendment, Camco had overpaid royalties. Camco told Bass–Richardson that they would temporarily stop paying royalties on other sales to offset the UK overpayments. Camco estimated the cost of the UK overpayment at $709,339.54. Bass–Richardson replied that Camco were in default under the agreement and subsequently filed suit. Bass–Richardson contend that they are owed $211,132.57 on the UK patents from the 1991 date when Camco stopped paying through the twenty-year anniversary of the patents and the $709,339.54 that Camco offset from other royalties due.

Camco filed a motion for partial summary judgment, asserting that because they were a licensee, they were exempted from the four-year extension on UK patents. Bass–Richardson then filed a motion for summary judgment claiming that the transfer of rights from them to Camco constituted an assignment and that as assignees, Camco were obligated to pay royalties for the additional four years. Both sides agree that summary judgment is appropriate in this case. The trial court granted summary judgment for Bass–Richardson. Although the summary judgment order did not specify the grounds on which it was granted, in a letter to counsel, the trial court stated that the transfer constituted an assignment, instead of a license, because every substantial right had been transferred.

## POINTS OF ERROR ONE THROUGH FOUR

Camco contend that the trial court erred in granting summary judgment for Bass–Richardson and in denying summary judgment for Camco because the transfer of rights under the patent was a license and not an assignment.

Camco states that they assigned all of their interests in the existing patents to Bass–Richardson in the 1974 agreement and

that Bass–Richardson then licensed back the patents to Camco. Camco note that the 1974 agreement uses the phrase *license* in describing the transfer from Bass–Richardson to Camco. Camco concede that although whether an agreement "is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions," citing *Waterman v. Mackenzie,* 138 U.S. 252, 256, 11 S.Ct. 334, 335, 34 L.Ed. 923, 925–26 (1891) but maintain that "the language used by the parties clearly manifests their intentions." Camco also state that when they sublicensed patents to other companies, the sublicense agreements recited that the patents were "owned by Bass and Richardson and licensed by Camco." Camco assert that the first time Bass–Richardson used the term *assignment* in any of their pleadings was after Camco moved for summary judgment. Camco conclude that because the 1974 agreement assigned the patents to Bass–Richardson, it would make no sense for Bass–Richardson to assign the same rights back to Camco.

Camco also argue that Bass–Richardson retain substantial rights of ownership, including enforcement and exploitation of the patents. Camco point out that the 1974 agreement gave Bass–Richardson "the right, but not the duty, to select counsel (in its own behalf) and to participate in said suit. Bass–Richardson shall also have the right to bring suit to enforce the licensed patents, and in such case, Camco agrees to cooperate as required in prosecuting any such lawfully instituted suit." Camco contend that Bass–Richardson's retention of the right to bring infringement suits independently of Camco, and to join any action Camco initiate, shows that Bass–Richardson still own the patents and that Camco are only licensees. Camco note that Bass–Richardson retained the right to exploit the patents, to veto settlement of infringement suits, and to approve assignments of Camco's interest under the agreement.

### The Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that

no genuine issue of material fact exists and that movant is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Cate v. Dover Corp.,* 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301–02 (Tex.1990), and all doubts about the existence of a genuine issue of a material fact are resolved against movant. *Cate,* 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.,* 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.,* 391 S.W.2d at 47.

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of movant's cause of action or defense as a matter of law. *City of Houston,* 589 S.W.2d at 678.

■ When the trial court's order granting summary judgment for one movant and denying summary judgment for the other does not specify the grounds on which it rests, we may affirm the trial court's judgment if any of the grounds raised in the prevailing movant's motion are meritorious. *Wiman v. Tomaszewicz,* 877 S.W.2d 1, 5 (Tex.App.—Dallas 1994, no writ). We may also reverse the trial court's judgment and render judgment for the other movant based on any meritorious grounds raised in its motion. *Id.* On appeal, we must consider all the evidence accompanying both motions. *Id.*

### Application of Law to Facts

■ Although the 1974 agreement between Bass–Richardson and Camco grants

the right to "license," we must look at the "legal effect of [the] provisions" of the agreement as well as the language used. *Waterman*, 138 U.S. at 256, 11 S.Ct. at 335, 34 L.Ed. at 925–26. In order for a transfer to be considered an assignment, rather than a license, the instrument must convey:

> (1) the whole patent, comprising the exclusive right to make, use, and vend the invention throughout the United States; or (2) an undivided part or share of that exclusive right; or (3) the exclusive right under the patent within and throughout a specified part of the United States. A transfer of either [sic] of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers.

*Id.* In sum, a transfer which conveys the rights to make, use, and sell is considered an assignment; a transfer which conveys less than those rights is a license.

■ Camco argue that the 1974 agreement did not give it the right to *use* the mandrels; Bass–Richardson reply that the rights conveyed were broader than those described in the *Waterman* test. The pertinent language includes a laundry list of rights:

> [Bass-Richardson] hereby grant and convey unto [Camco] the exclusive right and license throughout the world to make, charge for the use of, sell, rent and install equipment and the methods of use under the inventions, applications, dockets, and patents described above in this paragraph for the respective life or lives thereof, and to grant sub-licenses to others. . . .

Bass-Richardson contend that the transfer "unambiguously expresses the parties' intent that Camco receive the right to use." It is undisputed that Camco were transferred the right to charge others for the use of the patented devices, and Bass–Richardson argue convincingly that the right to receive money from others in exchange for allowing them the use of patented technology is the "commercially important component of 'use.'" In order for Camco to convey to their customers the right to use the mandrels each time the customer is charged, Camco must have also owned the right to use it.

One cannot convey a right which one does not have. *See Carter v. Associates Discount Corp.*, 550 S.W.2d 399, 401 (Tex.Civ.App.—Amarillo 1977, no writ).

Camco argue that they would be acting beyond the 1974 agreement if they chose to use one of the mandrels for themselves in an oil well. It is undisputed that neither Camco nor Bass–Richardson are in the business of *using* the mandrels in oil drilling. Bass–Richardson are interested in royalty payments resulting from others' *use* of the equipment; Camco are presumably interested in selling to others the equipment over which they have a monopoly.

In *Waterman*, the transfer held to be a license (rather than an assignment), gave the right to "manufacture and sell" but "did not include the right to use [the patented device], at least if manufactured by third persons." *Waterman*, 138 U.S. at 257, 11 S.Ct. at 336, 34 L.Ed. at 926. Such a transfer is admittedly more limited than that from Bass–Richardson to Camco; there can be no doubt that Camco have the right to allow a third-party to manufacture the mandrels and then charge others for use of mandrels manufactured by the third-party. We read the phrase "method of use" as including Camco's use of the mandrels and find that the transfer from Bass–Richardson to Camco passes the *Waterman* test.

■ An additional test to determine whether a transfer is an assignment or a license is the "all substantial rights" test:

> Whether a transfer constitutes a sale or license is determined by the substance of the transaction and a transfer will suffice as a sale if it appears from the agreement and the surrounding circumstances that the parties intended that the patentee surrender all his substantial rights to the invention.

*Bell Intercontinental Corp. v. United States*, 180 Ct.Cl. 1071, 381 F.2d 1004, 1011 (1967). Under this test, a conveyance of all substantial rights is considered an assignment. 26 U.S.C. § 1235 (Supp.1996). This test covers transfers that do not include the right to use, as long as the transferor has not retained a substantial right. *Bell*, 381 F.2d at 1018.

Bass–Richardson contend that all substantial rights were transferred to Camco under the 1974 agreement.

■ In addition to the rights of making and selling the mandrels, Camco was conveyed the right to license others to do so and in fact exercised this right. Conveyance of the right to license others supports a finding that a transfer is an assignment. *See Hook v. Hook & Ackerman, Inc.,* 187 F.2d 52, 57 n. 5 (3rd Cir.1951); *Heywood–Wakefield Co. v. Small,* 96 F.2d 496 (1st Cir.), *cert. dism'd,* 305 U.S. 663, 59 S.Ct. 54, 83 L.Ed. 430 (1938).

Additionally, Bass–Richardson delegated to Camco the responsibility to sue for patent infringement:

> Camco assumes responsibility to enforce the patents licensed under the Bass–Camco license and Camco shall use its best efforts to enforce such patents and uphold the validity thereof.

> Bass-Richardson hereby agrees that they will permit the use of their name in any such lawfully instituted suits and that Bass–Richardson will sign all necessary and lawful papers, provided, however, that in any suit brought by Camco, Bass–Richardson shall have the right, but not the duty, to select counsel (in its own behalf) and to participate in said suit. Bass–Richardson shall also have the right to bring suit to enforce the licensed patents, and in such case, Camco agrees to cooperate as required in prosecuting any such lawfully instituted suit.

Bass-Richardson also agreed to pay one-half of Camco's legal fees and expenses, up to $25,000 in any license year, relating to litigation of patent infringement.

■ The right to sue is one of the most important ones given in a patent. *Afros S.P.A. v. Krauss–Maffei Corp.,* 671 F.Supp. 1402, 1445 (D.Del.1987), *aff'd,* 848 F.2d 1244 (Fed.Cir.1988); *Crown Die & Tool Co. v. Nye Tool & Machine Works,* 261 U.S. 24, 43, 43 S.Ct. 254, 258–59, 67 L.Ed. 516, 522 (1923). At least one court considers the express grant of a right to sue a fundamental characteristic of an assignment rather than a license. *Sybron Transition Corp. v. Nixon, Hargrave, Devans & Doyle,* 770 F.Supp. 803,

808 (W.D.N.Y.1991). We view the permission retained by Bass–Richardson to join in or bring suit to be merely a means of enforcing their interest, similar to the arrangement in *Golconda Corp. v. Commissioner of Internal Revenue,* 29 T.C. 506, 509, 1957 WL 999 (1957), where an agreement which provided that a transferor was to bring suit in the event of an infringement was found to be a sale (and analogous to an assignment).

Camco claim that Bass–Richardson retained the right to "force Camco to exploit the patents" based on a provision urging Camco to use "its [sic] best efforts to sublicense others under the Bass–Camco license." Camco contend that an owner/assignee would have the freedom not to sublicense if it so chose. Camco assert the 1974 agreement also requires them to obtain prior written consent and approval from Bass–Richardson before entering into any voluntary agreement during litigation, requires Camco to obtain written permission from Bass–Richardson before assigning Camco's interest in the agreement, and reserves for Bass–Richardson some control over how Camco sublicensed the inventions. Camco assert that these rights retained for Bass–Richardson are substantial and indicate that the transfer was a license and not an assignment.

We agree with Bass–Richardson's response that any privileges retained were merely to guarantee payment, which was based solely on the amount of sales. Various restrictions on transfers to sublicensees have been found not to convert an assignment to a license. *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,* 944 F.2d 870, 875 (Fed.Cir.1991); *Rollman v. Commissioner of Internal Revenue,* 244 F.2d 634, 639–40 (4th Cir.1957). As a result, we conclude that the trial court was correct in its determination that the transfer from Bass–Richardson to Camco was an assignment and not a license. Points of error one through four are overruled.

## POINT OF ERROR FIVE

Camco contend that the trial court erred in awarding Bass–Richardson attorneys' fees of $200,000, because the amount is excessive

and unreasonable in view of the amount in dispute and the resolution of this case without the need for a trial.

■ A trial court may award attorneys' fees that are reasonable and necessary. *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10 (Tex.1991). A trial court has great latitude in fixing attorneys' fees. *USX Corp. v. Union Pacific Resources Co.,* 753 S.W.2d 845, 857 (Tex.App.—Fort Worth 1988, no writ). The assessment of attorneys' fees will not be overruled unless there is a clear abuse of discretion, and the appellate court may not substitute its judgment for that of the trial court. *Id.* The elements most frequently considered by the courts in determining whether attorneys' fees are reasonable are: (1) the nature of the case, its difficulties, complexities and importance, and the nature of the services required to be rendered by the attorney; (2) the amount of money involved, the client's interest at stake, and the amount of time devoted by the attorney and the benefit derived by the client; and (3) the time necessarily spent by the attorney, the responsibility imposed on the counsel, and the skill and experience reasonably needed to perform the service. *Rosas v. Bursey,* 724 S.W.2d 402, 410–11 (Tex.App.—Fort Worth 1986, no writ).

■ The award of $200,000 in attorneys' fees was supported by an affidavit from one of Bass–Richardson's attorneys. The three-volume transcript indicates that discovery was extensive, and the case involves complex questions of patent law. The trial court did not abuse its discretion in awarding attorneys' fees to Bass–Richardson in the amount it did. Point of error five is overruled.

The judgment of the trial court is affirmed.